DAVID ISRAEL, Ex'r of JOHN ISRAEL, dec'd v. NANCY KING, Ex'x *de son tort* of CHARLES IVEY.

Evidence to charge one as *executor de son tort*, need not be sufficient to warrant a conviction of felony.

In seeking to charge a widow as *executrix de son tort*, the value of her year's provision should be deducted from the assets found to be on hand.

The personal representative of a deceased administrator is a necessary party to a suit against his widow, seeking to charge her as *executrix de son tort*.

CIVIL ACTION, to charge defendant as executrix *de son tort*, tried before *Buxton, J.,* at the January (Special) Term, 1873, of the Superior Court of ROBESON county.

The following is the case settled by his Honor, Judge BUXTON, and sent to this Court as a part of the transcript of the record.

"The defendant, Nancy King, was first the widow of

Charles Ivey, who died 27th January, 1866. With her consent, letters of administration on the estate of Charles Ivey, was granted to Reuben King at the February Sessions 1866, of the County Court of Robeson county. In 1867, May 31st, the defendant, Nancy, intermarried with the said King, who died before the commencement of this suit, August, 1869, leaving a will and a large estate.

This present action was instituted by plaintiff to recover from the defendant as *executrix de son tort* of her former husband, Charles Ivey, the payment of certain notes, set out in detail in his complaint, alleged to be due the plaintiff's testator from said Ivey on the ground that the defendant had misapplied to her own use a quantity of cotton and bacon belonging to the estate of Charles Ivey, her late husband.

Upon the trial the defendant objected to the sufficiency of the complaint, because it did not specify the quantity of cotton and bacon alleged to have been converted. The Court sustained the objection, but permitted the plaintiff to amend his complaint by inserting : " Eighteen four hundred lbs. bales of cotton and 2,000 lbs. of bacon;" the complaint as originally drawn was verified by affidavit, but was not re-sworn to after the amendment. Defendant excepted.

This amendment to the complaint having been made, the plaintiff took the ground that the answer ought to be responsive to the amended portion of the complaint, or else that the allegation should be taken to be true. The Court concurred in the position, whereupon defendant asked and obtained leave to amend her answer, which was done by inserting the statement in reference to 16 bales of cotton and 1500 lbs. bacon.

On the part of the plaintiff, it was in evidence that all the notes mentioned in the complaint, except one for $80, (which was subsequently withdrawn by plaintiff) were due and owing by the estate of Charles Ivey to the testator of

the plaintiff. It was further proved that at the time of his death Ivey was in possession of 16 bales of cotton, a large quantity of bacon, a large number of hogs and other personal property.

The plaintiff further proved by one Branch, the former overseer of Ivey, that some three weeks after Ivey's death, the witness took possession secretly of 12 bales of cotton and 42 large sides of bacon, which were disposed of under her directions—the cotton being carried off by night to market and sold, partly at Fayetteville and partly at Riverside ; that in the trip to Fayetteville he was accompanied by Dr. Norment, under whose instruction the defendant directed him to act. This witness also testified that by direction of the defendant, after her husband's death, he secreted in the woods a mile from the house, a lot of 40 hogs belonging to the estate, to prevent them from being sold for the benefit of the estate, and that they were not sold, but were killed for defendant ; that he was also directed to secure all the valuable tools and not have them sold. This, he, the witness did, and the tools were not sold. For the plaintiff it was also proved by Mrs. Branch, wife of the preceding witness, that shortly after the sale of the cotton in Fayetteville, the defendant exhibited to her a bag which she, the defendant, told her contained the cotton money.

Mrs. Branch also testified that the defendant had corn, lard, pork and crockery conveyed off and secreted, to prevent these articles from being sold for the benefit of the estate of her husband, Charles Ivey ; this was after his, Ivey's death. It was also in evidence, that at the time of the sales spoken of, cotton was worth 20 cents per lb. in silver, and bacon 20 cents in greenbacks.

In answer, the defendant proved by Dr. Norment that her husband, Charles Ivey, and John Ivey, his son, both died of small-pox in January, 1866, on the plantation, within a few days of each other; that the witness was the attending

physician, and that it was difficult to provide nurses or other attendants or medical care at the time; that his whole time for 30 days was occupied by these two cases of small-pox, and that the county was in a greatly unsettled and disturbed condition owing to the prevalence of the disease. The witness further testified that fearing to lose his bill, amounting to $1500, and as the only means of securing it after the death of the Iveys, he went to the house of the defendant in the night time, and without her knowledge or consent, expressed or implied, and with the aid of the over-seer, he took 8 bales belonging to the estate, and 4 bales pointed out to him by the overseer as belonging to the estate of John Ivey upon whose effects he, the witness, afterwards became administrator and sold them and applied the pro-ceeds to the payment of his medical bill, which was larger than the amount of sales; that afterwards, upon its becom-ing known to him that Mrs. Ivey was in need he loaned her $150 of the money arising from the sale of John Ivey's cotton, she promising to return it when called for; that the money he let her have was silver, and that she never got a cent of the proceeds of the eight bales of her husband's cotton, and that at the sale made by Reuben King, admin-istrator of Charles Ivey, he, the witness, bought four other bales of cotton, for which he gave his note.

For the defendant, was further read in evidence the record of proceedings in the County Court of Robeson, instituted by defendant as widow of Charles Ivey to obtain a year's allowance, whereby it appeared that at November Term, 1866, the report of the commissioners were confimed. By this report there were set apart for her use certain articles, which not being on hand the deficiency was assessed in money as prescribed by law, and which amounted to $146.50. The account of sales of Reuben King as administrator of Charles Ivey was also read in evidence, by which it ap-peared that 23 hogs, a number of pigs and a quantity of

corn were there, March 1866, sold, of which the widow pur-
chased 8 of the hogs, a lot of the pigs and 20 bushels of
corn.

.The evidence being closed, one of the defendant's counsel
in his address to the jury called attention to the 118 chap.,
sec. 17 Revised Code, which allows the widow of an intestate
to use so much of the crop, stock and provisions on hand,
as may be absolutely necessary for the support of herself
and family, until grant of letters of administration, and he,
the counsel insisted that the complaint made no reference
to this right of the widow, and contained no averment, that
she had transcended this right. In reply the plaintiff's
counsel insisted that the complaint did in effect make that
averment, as it charged that the widow had appropriated
to her own use eighteen four hundred pound bales of cotton,
and 2000 lbs. of bacon that should have been sold by his
administrator and held as assets for the payment of his
honest debts. In the view presented by the counsel of the
defendant, his Honor concurred, and held that the com-
plaint shold state explicitly that the defendant had appro-
priated to her own use over and above what was necessary
for the support of herself and family until grant of admin-
istration, and directed the complaint to be amended by in-
serting the required averment. Complaint thus amended
was not re-sworn to. Defendant excepted. Defendant's
counsel then asked in writing this special instruction. "That
the testimoney to charge the defendant as *executrix de son
tort*, must be sufficient to warrant a conviction of felony,
viz: taking, stealing and carrying away the personal pro-
perty of the deceased, had it been done by any other person
not under her direction." Deeming it erroneous, his Honor
omitted to notice the instruction in his charge to the jury.
He instructed the jury that in order to charge the defendant
as executrix *de son tort*, of Charles Ivey, the appropriation
by her of cotton and bacon belonging to his estate, must

have been of more than was necessary for the support of herself and family from the time of his death until administration was granted on his estate, and such appropriation must have been fraudulent, done with the intent to defraud the creditors of Ivey. Defendant excepted.

His Honor handed the jury three issues in writing to which they were to respond, to-wit:

1. Are the notes read in evidence due the plaintiff?

2. Did the defendant, with intent of defrauding the creditors of Charles Ivey, fraudulently appropriate to her own use, 18 bales of cotton and 2,000 lbs. bacon, or any part thereof, being cotton and bacon more than was necessary for the support of herself and family from the time of his death, 27th January, 1866, until administration was granted on his estate at February Term, 1866, (4th Monday in February, 1866)?

3. If so, what was the quantity and value of the cotton and bacon, thus fraudulently appropriated?

In regard to these issues the Court instructed the jury that if they found the first or second against the plaintiff, they need enquire no further, but if they found them both in favor of the plaintff, they should then proceed to respond to the third interrogatory.

In rendering their verdict, the jury returned a written answer to the first and third issues; to the first, they found that the "notes were just;" to the third, they answered;" 12 bales of cotton, 4860 lbs. @ 20 cents gold, $680; 47 sides of bacon, 840 lbs. @ 20 cents currency, $168.

To the second issue, no' answed was appended. his Honor inquired of the jury "how they found the second issue? The jury answered "in favor of the plaintiff." Thereupon his Honer directed their answer to the second interrogatory to be entered in the affirmative. Defendant excepted."

Upon the foregoing finding of the jury, the Court di-

rected a reference to the clerk to state the amount due upon the notes, allowing the legislative scale of depreciation, and for the amount, to enter judgment in favor of plaintiff and for costs.

From this judgment, defendant appealed.

*Leitch, N. A. McLean and Cantwell,* for appellant.
*Strange and W. McL. McKay,* contra :

The acts complained of were committed by the defendant *before* letters of administration were granted. Subsequently King qualified as administrator; about twelve months thereafter King, the administrator, married the defendant; after King's death the action was commenced against defendant to charge her as executor *de son tort* of Ivey.

The distinction made by the case seems to be this: that when the acts relied on to charge one as executor *de son tort* were committed before the appointment of administrator or qualification of an executor, then the creditor may maintain his action, though there be at the time of commencement of action a rightful administrator or executor ; but if the acts are committed after appointment of administrator or qualification of executor an action will not lie by creditor. *Mc-Monie* v. *Strong,* Dev. & Bat., 87 ; 2 Wheaton Selwyn, 787.

Executor *de son tort* may give in evidence that he has delivered assets to rightful executor *before* suit brought—no defence if delivered after suit brought. 1 Wms. Executor, 232 ; 1 Salk. 313 ; *Padget* v. *Priest,* 2 Term Rep., 100 ; *Curtis* v. *Vernon,* 3 Term Rep., 590 ; 2 H. Blackstone, 18.

How could this defense arise unless suit could be maintained after the appointment of administrator ?

May join executor *de son tort* with rightful executor. 1 Wms. Executor, 232.

2. But after acts committed and before suit brought the

defendant married administrator, and King, therefore, became liable for her debts.

But the suit was not brought until after the death of King, and though the effect of the marriage was to make King liable, it did not relieve her, and upon his death the suit may be maintained against Nancy King, the defendant. McQueen on Husband and Wife, 59 vol. Law Lib. marginal pages 39 and 40, and page 193.

3. It is insisted that by the marriage the assets of the estate of Ivey which had been appropriated by defendant, passed by operation of law, into the possession of the rightful administrator and therefore defendant is discharged from liability.

It is true that the delivery of assets *before* suit was brought by executor *de son tort* to rightful administrator, is a defense to the action; but this cannot be presumed; the burden of proof is upon the defendant.

The evidence shows that these goods—corn and bacon— were taken off in the night time and sold. Is there any evidence that the proceeds of sale were in the hands of defendant at the time of marriage?

The evidence is the other way. Dr. Norment, witness for defendant proves that the widow was in such a destitute condition before marriage with King that he loaned her $150.

RODMAN, J. We think it unnecessary to notice the first and second exceptions which relate only to the sufficiency of the pleadings. His Honor had the right to allow or require the amendments, whether they were necessary or not, and after they were made at last, the pleadings sufficiently made the issues which were submitted to the jury.

*3d Exception.* The defendant's counsel requested the Judge to charge the jury "that the testimony to charge the defendant as exector *de son tort* must be sufficient to warrant a

conviction of felony, viz: taking, stealing and conveying away the personal property of the deceased, had it been done by any other person not under her direction."

The judge properly declined this, but told the jury that it must be proved that she took more of her husband's goods than was necessary for the support of herself and family up to the grant of administration, that it must have been done fraudulently and with the intent to defraud his creditors. We think if there is any error in this it is one of which the defendant cannot complain.

His Honor submitted three issues to the jury:

1. As to the notes declared on.

2. Did defendant fraudulently appropriate the cotton and bacon mentioned, and

3. What was their value;

And upon the jury finding the two first issues for the plaintiff directed a judgment to be entered for the value of the notes, not to exceed the value of the goods appropriated, as found by the jury.

It is now suggested that the pleadings and evidence disclose two defenses which (if found as facts by the jury or upon a reference) the defendant should have the benefit of:

1. That the value of the year's provision assessed to her should be deducted from the assets found to have been received.

We think this should be, unless it shall appear that the years' provision was paid from some other source. Such an allowance has priority to all debts. It is not a debt owing by the deceased, and consequently does not come within the rule that an *executor de son tort*, cannot retain for a debt to himself. It is a provision which the law makes for the support of the family during the first year after widowhood. Moreover, a retainer may be justified by obtaining administration, and the marriage with the administrator was equivalent to that for this purpose.

2. The other defence goes to the whole demand, viz: that the defendant before suit brought by the plaintiff married the rightful administrator, whereby she transferred and paid over to him all the assets of the estate, and became released from all further liability by reason of the same.

The fact of the marriage appears to be admitted by the pleadings. Recent legislation has so changed the law respecting the effects of marriage on the contracts and property of the parties to it that any laborious discussion of what they were would be unprofitable. Moreover as in the view we take of the case the personal representative of the administrator should be a party, and as the questions which are now suggested do not appear to have been considered below, and were not fully argued in this Court, we prefer to express no opinion on any question further than may be necessary to confine our inquiry within certain limits.

We suppose it to be clear that if one who has made himself an *executor de son tort* by taking possession of the property of a deceased, accounts with and pays over to the rightful administrator before suit brought by a creditor, such payment is a defence to the action of the creditor. 1 Williams on Ex'r 235. *Padget* v. *Priest*, 2 Y. R. 97; *Curtis* v. *Vernon*, 3 Y. R. 587.

If a man being a creditor in his own right marries his *feme* debtor his debt is realeased forever. 8 Co. 136; 1 Thomas Coke 435, note D; Dyer 140.

If however the debt be to the husband as a trustee, it cannot be that as between the debtor and the *cestui que trusts*, the debt is extinguished. Bacon Abrid. 9, Release B. Cro. Eliz. 114; Moore 236, pl. 368; Leon 320. *Dorchester* v. *Webb*, Cro. Car. 372; *Cotton* v. *Cotton*, 2 Vern. 290.

How far it would cast any liability upon the husband after the termination of the marriage by his death, and whether that liability would be primary or secondary as between his representative and the *feme*, we have not found

determined.   It may be that it would depend upon whether he actually received from his wife the very assets of his intestate which she had appropriated, or other property into which they had been converted; or it may be affected by the fact that he obtained by her other property sufficient to pay the debt.   *Carmichael* v. *Carmichael*, 2 Phil. C. C. (Eng. ch. Rep.) 101 ; *Cotton* v. *Cotton*, ub. 2 Tern. 270 ; *Powell* v. *Bell*, Pre. chap. 255.

These questions are left open.

This case therefore is remanded in order that the personal representative of King may be made a party, and that it may be ascertained what property King acquired by his marriage with the defendant, and if necessary that accounts may be taken of the administration of the deceased Ivey, both by the defendant, and by King, and that such further proceedings be had, &c.

The findings on the issues will stand in the mean while.

PER CURIAM.     Case remanded and order accordingly.